May it please the court, Candace Mitchell on behalf of Mr. Jones, who was sentenced in front of the district court to a sentence of 130 months. This sentence, 22 months over the high end of the range as recommended by the government, is one that did not take into account Mr. Jones' personal circumstances while growing up. It does not take into account the circumstances of the case before the district court. Mr. Jones was an individual who at the time he had been sentenced had a daughter with leukemia, had never served more than 60 days in custody total, and found himself at the conclusion of the sentencing hearing with a sentence of 130 months. This sentence was procedurally and substantively unreasonable. We're asking this court to revocate the sentences for all counts, counts one through six, because they were all impacted by the district court's failure to observe the statutory maximum involved with regards to the gun counts. In this instance, the district court sentenced Mr. Jones to a sentence above the high end of the statutory maximum of 10 years on the gun counts when it sentenced him to 130 months. The government ---- Everybody seems to agree it's got to go back because of that, I gather. What do we do about the enhancement for maintaining a drug premises? In this instance, the enhancement for maintaining a premises is one that the court, the district court should not have applied. The factors that the district court ---- the district court did not properly consider what was set forth in the sentencing guidelines and the advisory note to the sentencing guidelines as to when that enhancement is properly implied. In considering whether that enhancement is applied, the district court should have looked to whether the drug use was a primary purpose or an ancillary purpose to the ---- the sales from the drugs at the residence was an ancillary purpose and not the primary purpose in the residence. What should be the key factor in that regard in making that determination? Frequency, substantial amount of drugs, or all that? Well, to determine that Mr. Jones' drug sales were an incidental or collateral use for the premises, we could do under either approach. The sentencing guidelines specifically bring out the fact of the frequency of the sales that are there. And in this case, we can look to the fact that over a six-month period that Mr. Jones was observed selling drugs from the residence, there were only three instances that he sold drugs. On each of those instances, he sold it to a confidential informant, a close personal friend of his, someone he had known since childhood. The amounts he sold were of a small amount. It was not the large amounts that we were seeing in these other cases that the Seventh Circuit and the Eighth Circuit specifically referenced. Mr. Jones did not, in one instance, to a sale to the confidential informant, Mr. Jones didn't even know where some of the drugs were kept in the house. That doesn't indicate that this was something that he frequently did. It indicates this was something that was incidental or collateral use to the property. An individual who frequently sells drugs from a residence would know exactly where all the drugs were kept and how to reach that because he would frequently go to that part of the residence to access the drugs. Mr. Jones did not. Even if we were to use the substantial analysis that the Eighth and Seventh Circuits have turned to in determining whether or not the two-level enhancement applies, Mr. Jones also would not meet that standard either. The substantial cases, Miller and Sanchez, both focused on individuals who had had long and demonstrated histories of substantial amount of drug trafficking. In Miller, we had an individual who had been at the residence, his home, and had been selling from that residence over a period of six years. That's not the case with Mr. Jones. In Sanchez, we had an individual who was receiving substantial amounts of methamphetamines. He was a wholesale distributor. He was not a street-level distributor. This two-level enhancement set forth by the Sentencing Commission was not something that the Sentencing Commission would have wanted to have applied in every single case. Otherwise, if any time anyone sold drugs from a residence, it would be applicable. That wasn't the goal of the Sentencing Commission. The Sentencing Commission wanted district court judges to do a fair and measured analysis of the circumstances and the facts surrounding the drug sales to determine whether or not the drug sales are incidental or collateral use of the property. Let me ask you this. After he was arrested on the Federal charges, do I understand correctly that there was a state search warrant served at his house? Yes, Your Honor. So at that time, when the state warrant was served, after he was already arrested on these Federal charges, they find evidence of manufacturing in the kitchen sink drain? Actually, I should be to clarify that. Mr. Jones had had three observations of the sales by Federal officers. He was not then arrested by Federal officers. He was later arrested by state officials much later on, and then after that arrest, then he was picked up and transferred into Federal property custody. What I was getting at is after he did these Federal sales, a state warrant was served at his house, and they find evidence of manufacturing cocaine in the kitchen sink. They find a large amount of cash. They find baggies and other stuff indicative of sales. Now, if the standard of review was deferential here, why wouldn't the district judge be within his discretion to say, you know, you had all this up together? And he's, you know, basically in all fall, he's not employed anywhere at the time. He's unemployed. You know, it all adds up. He's working out of his house selling drugs, you know. I still think that in this instance, the district court judge should have examined whether or not the drug sales were incidental, collateral. And furthermore, the contraband that was found in the kitchen sink area, it was a conclusory statement by the pre-sentence report. We don't actually know what was found. Unchallenged. The statement that was there was conclusory in its nature in that we don't know what was actually found. The district court didn't indicate on the record whether or not it was these factors that it took into consideration in making its decision that the two-level enhancement was applicable. Furthermore, the fact that Mr. Jones had some cash on hand, he was, while he wasn't employed at the time, he was arrested by the state officials. He had previously been employed, had been collecting disability. He had other forms of income. Okay, those are legitimate arguments. But, I mean, if we're looking to see if there's any basis for the judge to have done what he did, you add up all this together, he's unemployed, he's got $7,000 in cash, he's got drugs in baggies, they find it in the sink, you know, he's got three sales. You know, it sort of looks like he's selling dope from the house. And while he might be selling drugs from the house, this enhancement only applies if it is the primary use of the house. It's not one of the primary uses of the house. Mr. Jones had, over a period of six months, that he was being observed three times he was actually observed selling the drugs from the home. It's an incidental collateral use. Well, I mean, it's sort of hard to know where to draw the line. But he's, like, working out of his house, isn't he? I mean, he could have been selling Mary Kay. You know, this is what he's doing from the house. Well, I would liken it more to a, if it were, in fact, something where Mr. Jones had everyday sales, then it's directly applicable. If Mr. Jones was observed moving large quantities of drugs, then it's applicable. If someone over a six-month period is observed three times selling drugs, the enhancement isn't applicable. Turning to the other issues just briefly, the district court also erred in finding that Mr. Jones was a gang member. In doing so, the district court specifically never made, never resolved the factual issues that were before it, the facts that Mr. Jones contested that he had ever admitted that he was a gang member. And in doing so, the district court violated Rule 32 in making its determination that Mr. Jones was a gang member. Counsel, Judge Gould, a question on that. Don't we review for clear error the district court's determination that he was a gang member? Yes. We review the court's determination that he was a gang member for clear error. However, we reviewed de novo whether the court properly found, properly followed Rule 32 as to resolve the factual issues before it. And there were specific factual contentions that were brought up before the court that it never resolved under Rule 32. Finally, we would argue that the supervised release conditions that were imposed, the district court failed to properly evaluate the conditions in front of it in imposing the conditions that it imposed. I'm going to reserve the last 30 seconds. Thank you very much, appreciate it. Good morning. May it please the Court. My name is Anne Voites and I represent the government in this case. This Court should affirm defendant's sentences on counts 1, 2, 4, and 7 and remand for resentencing with the applicable statutory maximum on counts 3, 5, and 6. Counsel, Judge Gould, I'll just alert you. The issue that's of concern to me is the enhancement or the level increase for home distribution because there's a lot of law and a lot of circuits on that. And I thought the determination here is questionable in light of the standards used in those other circuits. Certainly. If the Court would like, then I'll address immediately the issue of the enhancement under 2D1.1.12. In this case, actually, we believe that the district court's imposition of that enhancement is supported both by the record and by the precedent that exists in both the Seventh and Eighth Circuits. If I might address it first, the issue here is whether it was used not for the sole purpose, but as one of defendant's principal or primary uses in maintaining the premises. And in this case, all of the transactions that took place with the confidential informant took place at the home. The investigation originally began after they got a report that defendant was selling drugs from his home. And at each time, the record indicates that defendant was the person who told the C.I. to come to his house. His house was where they sold the drugs. It's where, when they had the search warrant executed, they found, not just in the home, but in defendant's bedroom. They found drugs. They found loaded guns. And they found almost $7,000 in money. I guess my question is, how can three sales over six months be a primary use of the home for selling drugs?   home for selling drugs? It just said don't we have some analogous precedent under statute 846? Under – actually, it's 8 – I believe it's 856, Your Honor. But I'd suggest that the cases where this Court found that Section 856 did not apply, for example, in Mancuso, there were legitimate uses that were going on. For example, in Mancuso, he ran a dental office, and he had a handful of sporadic drug use or drug sale in the premises. And the Court found there that the legitimate uses far outweighed the illegitimate ones. But as the Eighth Circuit held in Miller, finding in a case where there were four controlled buys with respect to – actually, I apologize, with respect to the wife, there were three controlled buys, but that she also accepted payment there, she arranged for sales there, that that was sufficient. Similarly, in Flores O'Lake, they were dealing with a quantity of, I believe, roughly 30 or 40 grams. That was the Seventh Circuit one. And they looked to the fact that there, defendant – this was significant to defendant because he had no other legitimate source of employment. Here, defendant admitted to the probation officer that this was how he made money. He made money illegitimately by selling guns and by selling drugs. Why is it worse if he sells it from his house than if he sells it from his car? I don't quite get that. I think it was – part of what was motivating it was a concern with having houses that are the locus of drug trafficking activity, that that draws in violence, as indeed there's a record to support that here, and that it becomes something that pulls down the neighborhood and that renders it less safe. In the cases that you cited, wasn't there more – a larger quantity of drugs than what we have here? In comparison, this seems to be rather low in terms of the quantity of drugs as well as the – I'll use the term frequency of use of the premises to make those three sales over a six-month period. It seems to be very distinguishing from those cases that applied the enhancement that you cited as opposed to the facts in this case. I think it is different. We acknowledge that this is not a case like Sanchez where the defendant was engaged in a million-dollar, multimillion-dollar transaction. But this was a case where this was the defendant's sole source of income, or illegitimate use of selling guns and selling drugs. But even if it's his sole source of income, how does that affect the determination conclusively on, you know, using the house for that purpose on three occasions? Because the way that courts have looked at this issue is to look at the scope of it. In part, the scope is related to the defendant. And here, they've – particularly the courts have tried to avoid drawing a specific numerical cutoff. The question is, is it simply incidental? And we would submit that here, where the defendant admitted to the probation officer that he made his living by doing this, where the probation office found that he had no verifiable history of employment, he claimed to have had a couple months here or there. Where does he admit to the probation officer this is how he makes his living? I find that, Your Honor, it appears in paragraph 40 of the PSR. Let me turn this. And then his – also his employment history appears. That's not exactly what it says in paragraph 40. He says he sold drugs and firearms because he was in financial distress. Correct. But I believe – Not the same thing as that's how he makes his living. Correct. But he said that combined with the fact that he had no verifiable employment, the fact that the only – We can draw whatever inference we want, but if we're going to quote it, I just want to make sure we've got exactly what he said. He didn't say he was doing this to make his living. Correct. What he said was he was using it to – because he felt desperate to financially help his family and his brother, and that he did it to provide for his family, to be precise. But in that case, because – Okay. Because in this case he had no other source of employment, we'd submit that it was not an abuse of discretion, which is the standard by which this Court reviews the application of the enhancement. Going back to what Judge Gould raised about Section 856, the so-called crackhouse statute, is there any conflict that you see between 856, its case law interpreting it, and the application note here? No, I don't believe that there is. I think – although I would note that unlike 856, obviously the standard here is different because it's simply by a preponderance as opposed to beyond a reasonable doubt. And here we'd submit that the language – I'd also acknowledge that under the statute it also allows for application where there's simply use, and the guidelines is limited to distribution or manufacturing. If I might also return to the facts of what happened during the search warrant, the State search warrant which was executed, what happened was not only did they find those materials in the defendant's bedroom, but they also found that Herman He was in the kitchen when they came in, and he was fleeing out. And they found cocaine base and what were described as industry of manufacturing cocaine base in the garbage disposal, all of which supports the district court's application of the enhancement here. We would submit that. Small amounts together, right? Small amounts, but they were in the garbage disposal, which would suggest that he was trying to get rid of materials. If the Court has no further questions on the premises, I'd like to address a very brief view of the remaining issues. With respect to the issue of the defendant being a gang member, Judge Gould, you are correct that the standard that we review it by is whether it was clear error. And in this case, we would submit on this record it was not. Moreover, the district court did make adequate findings under Rule 32, because the only two issues that had been – that were in dispute before the district court were whether he was a DeVille gang member and whether he, in fact, admitted that fact to San Mateo County jail personnel on February 2010. And as the district court found, it made two findings. First, it said that the – it found that the government had carried its burden by a preponderance of the evidence. And then it also found that the defendant had he wished could have subpoenaed the officers and their records, and the court would have had a contested hearing. So the court has the documents submitted in the record, and based on those findings, he found that the defendant was a gang-affiliated member. We'd submit Rule 32 requires no more in this case. And the finding that defendant was a gang member, in fact, was not even close to clear error on the part of the district court. If I might address one final issue with respect to the conditions, with respect to the scope of the remand, we would submit that under Evans-Martinez, this Court need not remand on all counts. And because the sentence here was substantively reasonable and was justified based on facts that the Court can again consider on remand, this Court should simply remand on the counts as to which the government has conceded error and affirm with respect to the others. If the Court has no further questions, I would be happy to sit down. Roberts. Ms. Mitchell, back to you. Could you round up the time to a minute, please? Your Honor, with regards to remand, we would urge the Court to remand on all counts, including even in consideration of Evans-Martinez, because Evans-Martinez instructs that when the district court specifically looks at certain factors in determining what the ultimate sentence should be, when the sentence becomes unbundled, that those factors should be considered when determining whether or not remand is appropriate on all counts. In this instance, the district court specifically looks to the gun factors in determining what the ultimate sentence would be. Had the district court kept in mind that the statutory maximum was 120 months, those factors should affect the district court's determination of what the ultimate sentence would be in this case. How does it happen that a judge imposes a sentence that's beyond the statutory maximum? Does everybody just sleep and switch here, or what happens? Your Honor, I believe that, in my instance, because I was there, I think it was just a shock at the actual sentence that was imposed that caused everyone not to immediately then remind the district court that the 120 months was the maximum. I believe it was a shock to everyone present that the district court imposed a sentence 22 months over the high end of the guideline range. Addressing some of the other issues brought up, 856 in comparison to 2D1.1, the differences between the two are that the sentencing guidelines actually give advice as to what the application should be. And in giving advice as to what the application should be in comparison between 856, the sentencing guidelines specifically set forth that you're supposed to look at frequency of use and whether or not it's an incidental or collateral use. The gang membership, there were more instances of specific factual discrepancies that were brought before the district court that weren't addressed by the court in making its ruling under Rule 32, and specifically the district court under ---- You're out of time. Yes, Your Honor. Okay. Thank you, Ms. Mitchell. Ms. Boyts, thank you. The case is discharged as submitted. Good morning.
judges: Lemelle, Silverman, Gould